**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

PATRICK SANDER,

                    Plaintiff,

      v.

TOWNSHIP OF COXSACKIE COURT, et al.,

                    Defendants.

                              No. 1:23-CV-783
                              (DNH/CFH)

_____

**APPEARANCES:**

Patrick Sander
7 Saint Josephs Terrace
Albany, New York 12206
Plaintiff pro se

### REPORT-RECOMMENDATION AND ORDER

### I. Background

Plaintiff pro se Patrick Sander ("plaintiff") commenced this action on June 28,

2023, by filing a complaint.  See Dkt. No. 1 ("Compl.").  Plaintiff also filed an application

to proceed in forma pauperis ("IFP").  See Dkt. No. 2.  The undersigned has reviewed

plaintiff's IFP application and determines that he financially qualifies to proceed IFP.[1]

### II. Initial Review

### A. Legal Standard

---

[1] Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs he may incur in this action.

Section 1915[2] of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  It is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his [or her] submissions liberally and interpret them to raise the strongest arguments that they suggest."  Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (citation and internal quotation marks omitted).  This does not mean the Court is required to accept unsupported allegations that are devoid of sufficient facts or claims.  Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds on which these claims are based.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).  Pro se litigants are "not exempt . . . from compliance with relevant rules of procedural and substantive law[.]"  Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted).  Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  "A claim has facial plausibility when

---

[2] The language of § 1915 suggests an intent to limit availability of IFP status to prison inmates. See 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses").  The courts have construed that section as making IFP status available to any litigant who can meet the governing financial criteria.  See, e.g., Fridman v. City of N.Y., 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citation omitted).

Pleading guidelines are set forth in the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  "The purpose . . . is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted).  Rule 8 also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought . . . ."  FED. R. CIV. P. 8(a)(1), (3).  Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct."  Id. at 8(d)(1).

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  A later pleading may refer by number to a paragraph in an earlier pleading.  If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b).  This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]"  Flores, 189 F.R.D. at 55 (internal quotation marks and citations omitted).  A complaint that fails to

comply with the pleading requirements "presents far too [] heavy [a] burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). The Second Circuit has held that "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citation omitted). However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citation omitted). If dismissal is warranted and the plaintiff is pro se, the court generally affords the plaintiff leave to amend the complaint. See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995).

### B. Plaintiff's Complaint

Plaintiff alleges that on November 21, 2022, he was driving southbound on highway I-87 when he passed Township of Coxsackie Police Officer Anthony J. Bartolucci. See Compl. at 3. The first time plaintiff passed Officer Bartolucci, the officer followed plaintiff for several miles and then "sped up and passed" plaintiff. Id. Plaintiff passed Officer Bartolucci a few miles down the road and Officer Bartolucci pulled plaintiff over because of his "inspection sticker." Id. Plaintiff forgot his driver's license at home. See id. Plaintiff was charged with "Unlicensed Operator" and "Uninspected Motor Vehicle" and issued a summons to appear in court See id.

On December 12, 2022, plaintiff "responded to the summons" and was told to wait for a court date by Town Justice Wanda J. Dorpfeld. Compl. at 3. Plaintiff received

a letter the next day stating that Justice Dorpfeld accepted plaintiff's not guilty plea and offering a plea deal.  See id.  If plaintiff was not going to accept the deal, he was instructed to call the Town Court.  See id.

Plaintiff "received a second notice from the [] Department of Motor Vehicles" on March 8, 2023, explaining that "a trial and appearance" had occurred on December 12, 2022, and that a suspension of his license would take effect on April 14, 2023, if he did not respond by March 30.  See Compl. at 3-4.  The notification also included instructions on pleading guilty or not guilty.  See id. at 4.  Plaintiff "immediately called the Township of Coxsackie Court to inquire about th[e] suspension notice" and he "was told that [his] license would not be suspended."  Id.  Plaintiff sent a letter to Justice Dorpfeld on March 29, 2023, with the completed not guilty forms and he indicated that he wished to resolve the case by showing proof of his remedied inspection sticker and his license being valid at the time of the stop.  See id.  On April 11, Justice Dorpfeld sent plaintiff a letter indicating that she received plaintiff's letter, but that his license would be suspended on April 14 and until the tickets were resolved.  See id.  Plaintiff then called the Town Court and spoke with Deputy Town Court Clerk Jaqueline Polizzi who "berated" plaintiff and told him that his "license would be suspended indefinitely and that there were some outlandish instructions that" he did not follow.  Id.  Plaintiff alleges that Ms. Polizzi then had Town of Coxsackie Police Officer Springsted contact plaintiff and threaten to arrest him for harassment because he "called the Town Court too many times[.]"  Id.  Plaintiff wrote to Governor Kathy Hochul and the Chief Judge of Green County and filed a complaint with the Department of Justice.  See id. at 5.

Plaintiff's license was suspended on April 14, 2023, "indefinitely until [he] complied with some Ad Hoc submission rule[.]"  Compl. at 5.  Plaintiff alleges that this has made him unable to work or handle his daily affairs and is a violation of his right to due process.  See id.  Plaintiff contends that everything was a "racially motivated situation."  Id.  He also contends that "[t]he town still has a sign and illegal policy posted on the front door stating no cellphones in a publicly funded building."  Id.  Plaintiff asks that the charges against be "voided and made null," and he seeks $100,000 in damages, punitive damages, and an investigation into the Town of Coxsackie Courts.  See id. at 8.

### III.  Analysis

#### A.  Sovereign and Judicial Immunities

Plaintiff seeks to sue the Town of Coxsackie Court, Town Justice Wanda J. Dorpfeld, Deputy Court Clerk Jaqueline Polizzi, and the New York State Department of Motor Vehicles ("DMV") Commissioner Mark J.F. Schroeder.  See Compl. at 1-2.

The Eleventh Amendment to the U.S. Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  Thus, "[a]s a general rule, state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress."  Kisembo v. N.Y.S. Office of Children &

Family Servs., 285 F. Supp. 3d 509, 519 (N.D.N.Y. 2018) (quoting Jackson v. Battaglia, 63 F. Supp. 3d 214, 219-20 (N.D.N.Y. 2014)).  "This jurisdictional bar applies regardless of the nature of the relief sought."  Murawski v. N.Y. State Bd. of Elections, 285 F. Supp. 3d 691, 695 (S.D.N.Y. 2018) (quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984)).  "This immunity 'extends beyond state agencies to state officials at those agencies working on behalf of the state (i.e., in their official capacities).'"  Kisembo, 285 F. Supp. 3d at 519 (quoting Emmons v. City Univ. of N.Y., 715 F. Supp. 2d 394, 406 (E.D.N.Y. 2010)).

"The Unified Court System . . . is the name for the entire New York State judiciary[.]"  T.W. v. New York State Bd. of L. Examiners, 996 F.3d 87, 95 (2d Cir. 2021) "[T]he New York State Unified Court System is unquestionably an 'arm of the State,' and is entitled to Eleventh Amendment sovereign immunity."  Gollomp v. Spitzer, 568 F.3d 355, 368 (2d Cir. 2009) (quoting Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232, 236 (2d Cir. 2006)).

Plaintiff names the Town of Coxsackie Court as a defendant.  See Compl. at 1. As the Town Court is a part of New York's Unified Court System, it is immune from suit under the Eleventh Amendment.  See N.Y. Const. art. VI, § 1(a) ("The unified court system for the state shall also include the district, town, city and village courts outside the city of New York . . . ."); Surpris v. Harrison Police Dep't, No. 21-CV-7697 (LTS), 2021 WL 5166364, at *2 (S.D.N.Y. Nov. 5, 2021) ("[The p]laintiff sues the Harrison Town Court — a part of the New York State Unified Court System.  The Court therefore dismisses Plaintiff's Section 1983 claims against this defendant under the doctrine of

Eleventh Amendment immunity . . . .").[3]  Thus, the undersigned recommends dismissing plaintiff's complaint against the Town of Coxsackie Court.

Additionally, "[w]ith minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions." Zavalidroga v. Girouard, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017) (citing Mireles v. Waco, 502 U.S. 9, 9-10 (1991) (per curiam)).  "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.'" Id. (quoting Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2004)).  "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." Id. (citation omitted).  "Judicial immunity is immunity from suit, not just immunity from the assessment of damages." Id. (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).  "The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.'" Id. (quoting Mireles, 502 U.S. at 11-12).  "Injunctive relief against judges is also barred 'unless a declaratory decree was violated or declaratory relief was unavailable.'" Id. (quoting Bobrowski v. Yonkers Courthouse, 777 F. Supp. 2d 692, 711 (S.D.N.Y. 2011)).

Plaintiff names Town Justice Dorpfeld as a defendant for her actions taken in relation to plaintiff's traffic violation case.  See Compl. at 2-4.  Plaintiff's allegations concern conduct taken in Justice Dorpfeld's capacity as a judge and as such, she is entitled to judicial immunity.  See Publicola v. Lomenzo, No. 1:21-CV-1303 (DNH), 2022

---

[3] All unpublished decisions cited in this Report-Recommendation and Order have been provided to plaintiff, unless noted otherwise.

WL 1027099, at *11 (N.D.N.Y. Apr. 5, 2022) ("Upon review, [the] plaintiff's § 1983

claims against Town Justice Lomenzo . . . must be dismissed . . . ."), appeal dismissed,

54 F.4th 108 (2d Cir. 2022); Burdick v. Town of Schroeppel, 717 F. App'x 92, 93 (2d Cir.

2018) (summary order) (affirming district court's conclusion that town justice was

entitled to judicial immunity).  Thus, it is recommended that the claims against her be

dismissed.

Similarly, "[j]udicial immunity has been extended to court clerks and 'others who

perform functions closely associated with the judicial process' when they are performing

discretionary acts of a judicial nature which are essential to the judicial process,

especially the filing of court documents and managing a court's calendar."  Encarnacion

v. Irby, No. 22-CV-1733 (ER), 2022 WL 1451403, at *3 (S.D.N.Y. May 9, 2022) (quoting

Cleavinger v. Saxner, 474 U.S. 193, 200 (1985); citing Rodriguez v. Weprin, 116 F.3d

62, 66 (2d Cir. 1997) (extending judicial immunity to state court clerks who were ordered

by Appellate Division judges not to provide a litigant with documents and not to expand

the record on appeal)); Publicola, 2022 WL 1027099, at *11 (concluding that court

clerks were immune from suit); Argentieri v. Clerk of Ct. for Judge Kmiotek, 420 F.

Supp. 2d 162, 165 (W.D.N.Y. 2006) ("Inasmuch as [the] plaintiff claims that [the]

defendants violated his rights by refusing to acknowledge his motions or to schedule his

court proceedings, [the] defendants were assisting judges in performing essential

judicial functions.  As a result, [the] plaintiff's claims are barred by absolute immunity.").

Insofar as plaintiff alleges that Ms. Polizzi spoke to him about his case, his

license, and instructions he needed to follow, she was assisting with administration of

the case.  Thus, she is entitled to absolutely immunity for such conduct.  To the extent

plaintiff alleges that Ms. Polizzi made Officer Springsted threaten to arrest plaintiff, plaintiff does not state a claim for relief.  <u>See</u> Compl. at 4.  He does not state what claim he seeks to bring or on what grounds he is entitled to such relief.  His conclusory allegations are insufficient to state a claim for relief.  <u>See</u> FED. R. CIV. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]").  Based on the foregoing, it is recommended that plaintiff's complaint against Ms. Polizzi be dismissed.

Next, plaintiff names Commissioner Schroeder as a defendant.  <u>See</u> Compl. at 2. "[A]s a state official, the Commissioner of the New York Department of Motor Vehicles is protected by Eleventh Amendment sovereign immunity."  <u>Boda v. Comm'r of N.Y. Motor Vehicles</u>, No. 12-CV-4098 (BMC), 2012 WL 3704713, at *1 (E.D.N.Y. Aug. 27, 2012); <u>see</u> <u>also</u> <u>Mullin v. P & R Educ. Servs., Inc.</u>, 942 F. Supp. 110, 114 (E.D.N.Y. 1996) ("[T]o the extent that *pro se* plaintiff is alleging a suit against [DMV] Commissioner Jackson, such suit is also barred by the doctrine of sovereign immunity."); <u>Russo v. City of New York</u>, No. 02-CV-369 (TPG), 2003 WL 1571707, at *1 (S.D.N.Y. Mar. 26, 2003) ("[The p]laintiff cannot sue Martinez[, the former commissioner of the New York DMV,] in his official capacity for damages because this would violate the Eleventh Amendment."); <u>St. Martin v. Fiala</u>, No. 11-CV-6490, 2011 WL 6761067, at *1 (W.D.N.Y. Dec. 23, 2011) ("Accordingly, [the] plaintiff's action against defendant Fiala, in her official capacity as Commissioner of the New York State Department of Motor Vehicles, is actually a suit against the State of New York, and as such, must be dismissed as barred by the Eleventh Amendment to the United States Constitution.").  Thus, it is recommended that the complaint against Commissioner Schroeder in his official

10

capacity be dismissed with prejudice.  See Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004) ("Section 1983 claim is clearly barred by the Eleventh Amendment because the DMV is a state agency."); see also Boda, 2012 WL 3704713, at *1.

To the extent Commissioner Schroeder could potentially be sued in his individual capacity, "the personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  Victory v. Pataki, 814 F.3d 47, 67 (2d Cir. 2016) (quotation marks and citation omitted).  "A plaintiff must 'allege a tangible connection between the acts of a defendant and the injuries suffered.'"  Salvana v. New York State Dep't of Corr. & Cmty. Supervision, 621 F. Supp. 3d 287, 311 (N.D.N.Y. 2022) (quoting Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986)), reconsideration denied, 2022 WL 17083088 (N.D.N.Y. Nov. 18, 2022).  "The Second Circuit recently clarified that there is no special rule for supervisory liability and explained that a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Id. (quotation marks omitted) (quoting Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020)).  Plaintiff's complaint does not contain a single allegation against Commissioner Schroeder to establish his personal involvement in a constitutional violation.  See generally Compl.  Thus, it is recommended that the claims against Commissioner Schroeder in his individual capacity be dismissed without prejudice.

### B.  Claims Against Officers Bartolucci and Springsted

Plaintiff seeks to sue Officer Bartolucci for pulling him over which he claims was racially motivated.  See Compl. at 3, 5.  Plaintiff contends that he fixed any issues with his inspection sticker and his driver's license was valid at the time he was pulled over,

but that the tickets have not been resolved.  See id. at 4.  This is despite an alleged trial date of June 6, 2023.  See id. at 5.  Under Younger v. Harris, 401 U.S. 37 (1971), "it is appropriate for a federal court to abstain from exercising jurisdiction where . . . (1) there is an ongoing state proceeding; (2) an important state interest is implicated; and (3) the plaintiff has an avenue open for review of constitutional claims in the state court." McCulley v. N.Y.S. Dep't of Env't Conservation, 593 F. Supp. 2d 422, 430 (N.D.N.Y. 2006) (citation omitted).  "'[S]o long as the constitutional claims of [plaintiffs] can be determined in the state proceedings . . . the federal courts should abstain.'"  Spargo v. New York State Comm'n on Jud. Conduct, 351 F.3d 65, 76-77 (2d Cir. 2003) (second alteration in original) (quoting Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 434-35 (1982)).  "[T]o avoid abstention, plaintiffs must demonstrate that state law bars the effective consideration of their constitutional claims."  Id. at 78. "The relevant question under *Younger* is 'whether the state's procedural remedies *could* provide the relief sought [not] . . . whether the state *will* provide' the constitutional ruling which the plaintiff seeks."  Id. at 79 (alteration in original) (citation omitted).  "Appeals from city courts and town and village justice courts in the Third and Fourth Departments are taken to the appropriate County Court."  McKinney's Forms Civil Practice Law and Rules § 2:3.  Additionally, "Article 78 proceedings provide an adequate remedy for those who seek to challenge any action or inaction by an administrative agency or officers of state or local government."  Chaney v. City of Albany, No. 6:16-CV-1185 (NAM/TWD), 2019 WL 3857995, at *13 (N.D.N.Y. Aug. 16, 2019) (citing Hourihan v. Lafferty, 58 F. Supp. 2d 10, 14-15 (N.D.N.Y. 1999)).

Plaintiff's town court proceedings appear to be ongoing, they concern important state interests in maintaining traffic laws, and plaintiff can appeal town court decisions to county court or bring an Article 78 proceeding concerning DMV actions.  See Medrano v. Margiotta, No. 15-CV-3704 (JMA/ARL), 2017 WL 880964, at *6 (E.D.N.Y. Feb. 16, 2017) ("[T]he proceedings implicate New York's important interest in enforcing, and determining the constitutionality of, its traffic laws."), report and recommendation adopted, 2017 WL 876293 (E.D.N.Y. Mar. 3, 2017); Paul v. New York State Dep't of Motor Vehicles, No. 02-CV-8839 (AKH), 2003 WL 253065, at *1 (S.D.N.Y. Feb. 3, 2003) (citation omitted) ("A state administrative proceeding is currently pending and, should [the] plaintiff not prevail, he will be afforded an adequate opportunity to raise his constitutional claims through an Article 78 proceeding.  The issues involved in the proceeding, having to do with whether or not the City can supersede certain of the State's traffic laws, implicate the State's important interest in regulating intrastate traffic and in the uniform enforcement of the state traffic laws . . . .").  Thus, this Court should abstain from interfering in the town court proceedings at this juncture.

In any event, "[p]laintiff's Fourth Amendment claim is frivolous because a dispositive defense exists on the face of the complaint."  Elmore v. Onondaga Cnty. Sheriffs, No. 5:23-CV-00508 (GTS/TWD), 2023 WL 4264778, at *4 (N.D.N.Y. June 29, 2023) (citing Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)). "The constitutional reasonableness of a traffic stop does not depend on the actual motivations of the individual officers involved—'the Fourth Amendment's concern with reasonableness allows certain actions to be taken in certain circumstances, whatever the subjective intent.'"  Id. (quoting Wren v. United States, 517 U.S. 806, 813-14

13

(1996)).  "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."  Whren, 517 U.S. at 810.  In New York, "[n]o motor vehicle shall be operated or parked on the public highways of this state unless a certificate or certificates of inspection, as required by this article, is or are displayed upon the vehicle or affixed to the registration certificate for the vehicle . . . ."  N.Y. Veh. & Traf. Law § 306(b).  Courts have concluded that driving without a valid inspection sticker or an expired sticker establishes probable cause for a traffic stop.  See Sandstrom v. New York, No. 18-CV-01514, 2020 WL 3949344, at *15 (W.D.N.Y. Feb. 20, 2020) ("[T]he first traffic stop pertained to . . . charges which [the p]laintiff admits was predicated by [the d]efendant['s] [] observation that the vehicle [the p]laintiff was driving displayed an expired inspection sticker, establishing probable cause to stop [the p]laintiff for the traffic violation."), report and recommendation adopted sub nom. Sandstrom v. Chautauqua Cnty., 2020 WL 1861710 (W.D.N.Y. Apr. 13, 2020); Boone v. Post, No. 1:18-CV-01115 (EAW), 2021 WL 963591, at *3 (W.D.N.Y. Mar. 15, 2021) ("[The d]efendant had probable cause to believe that a traffic violation—specifically, operation of a motor vehicle without a valid inspection— had occurred at the time he initiated the traffic stop."); People v. Shirley, 175 N.Y.S.3d 804, 805 (App. Div.) ("A New York State Trooper lawfully stopped defendant's vehicle for having an expired inspection sticker."), leave to appeal denied, 200 N.E.3d 104 (Ct. App. 2022).

Plaintiff alleges that Officer Bartolucci pulled him over because of his "inspection sticker."  Compl. at 3.  After being pulled over, Officer Bartolucci charged him with driving without his license and driving an uninspected motor vehicle.  See id.  Plaintiff

14

contends that he later remedied his inspection sticker.  See id. at 4.  Thus, insofar as his inspection sticker was invalid or expired at the time he was pulled over, this constitutes probable cause for the stop.  See Sandstrom, 2020 WL 3949344, at *15; Boone, 2021 WL 963591, at *3.  This is a "dispositive defense."  Jiminez v. City of Cohoes Police Dep't, No. 5:22-CV-984 (MAD/TWD), 2022 WL 20054163, at *2 (N.D.N.Y. Nov. 7, 2022), report and recommendation adopted sub nom. Jimenez v. City of Cohoes, 2023 WL 3579794 (N.D.N.Y. May 22, 2023).

Next, "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a seizure of persons within the meaning of the Fourth Amendment."  United States v. Gomez, 877 F.3d 76, 86 (2d Cir. 2017) (citation omitted).  "Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, and attend to related safety concerns[.]"  Rodriguez v. United States, 575 U.S. 348, 354 (2015) (internal citations omitted).  "Because addressing the infraction is the purpose of the stop, it may 'last no longer than is necessary to effectuate th[at] purpose.'"  Id. (citation omitted).

Plaintiff alleges that after Officer Bartolucci stopped him,  ticketed him, and issued a summons for court.  See Compl. at 3.  There are no allegations that the stop lasted any longer than necessary to obtain plaintiff's information and issue the citations and summons.  As such, plaintiff has not stated a constitutional claim concerning a prolonged and unconstitutional seizure.  See Rodriguez, 575 U.S. at 354.  Thus, it is recommended that any claims against Officer Bartolucci be dismissed.

Plaintiff also names Town of Coxsackie Police Officer Springsted as a defendant because Officer Springsted called plaintiff and threatened to arrest him for harassment for calling the Town of Coxsackie Court too much.  See Compl. at 4-5.  Plaintiff does not state what claim he seeks to bring against Officer Springsted.  See Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]").  However, liberally construed, plaintiff's complaint can be seen as raising a First Amendment retaliation claim.  To state a First Amendment retaliation claim, a plaintiff "must plausibly allege that (1) he engaged in speech or activity that was protected by the First Amendment; (2) he suffered an adverse employment action; and (3) a causal connection existed between the adverse action and the protected activity."  Specht v. City of New York, 15 F.4th 594, 600 (2d Cir. 2021) (citing Smith v. County of Suffolk, 776 F.3d 114, 118 (2d Cir. 2015) (per curiam)).

"The First Amendment, which applies to the states through the Fourteenth Amendment, guarantees freedom of speech.  This guarantee extends not only to the right to speak, but also to the right to listen and receive information."  Kass v. City of New York, 864 F.3d 200, 207 (2d Cir. 2017) (citing, inter alia, U.S. Const. amend. I). "The First Amendment, however, 'does not guarantee the right to communicate . . . at all times and places or in any manner that may be desired.'"  Id. (quoting Heffron v. Int'l Soc'y for Krishna Consciousness, Inc., 452 U.S. 640, 647 (1981)).

Some courts have concluded that threats can constitute adverse action.  See Treizon Lopez v. Semple, No. 3:18-CV-1907 (KAD), 2019 WL 2548136, at *5 (D. Conn. June 20, 2019) ("A verbal threat to file a false [disciplinary report] against a prisoner

16

could amount to adverse action for purposes of a First Amendment retaliation claim."); Jennings v. Town of Stratford, 263 F. Supp. 3d 391, 403 (D. Conn. 2017) ("Viewing the evidence in the light most favorable to [the] plaintiff, [the] threat with its potential career-ending consequences was significant enough to deter a reasonable and similarly situated person of ordinary firmness from exercising his constitutional right to free speech as [the] plaintiff did.").

Other courts have concluded that threats may not constitute adverse action.  See Walker v. Senecal, No. 9:20-CV-0082 (AMN/CFH), 2023 WL 3051647, at *5-6 (N.D.N.Y. Apr. 24, 2023) (collecting cases) (concluding that a correctional officer's threats to an incarcerated individual that he would "end up dead or in the Box" did not constitute adverse action); Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 571 (2d Cir. 2011) (concluding that a threat to walk away from a job was not a materially adverse action because it "was hardly the kind of action that would dissuade a reasonable employee from complaining.").  Generally, "[t]he line between a *de minimis* verbal threat and a retaliatory adverse action hinges on the specificity and seriousness of the words used."  Walker, 2023 WL 3051647, at *5 (citing Mateo v. Fischer, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010) ("The less direct and specific a threat, the less likely it will deter an inmate from exercising his First Amendment rights.")).  At this juncture, the Court need not resolve whether Officer Springsted's threat to arrest plaintiff constitutes adverse action because plaintiff has failed to allege an actual injury.

"[T]he Second Circuit has held that the 'the harm or injury required to allege a First Amendment retaliation claim varies depending on the factual context.'"  Guillory v. Upstate Univ. Police, No. 5:21-CV-1117 (GLS/ATB), 2021 WL 6274449, at *3 (N.D.N.Y.

17

Dec. 14, 2021) (citation omitted), report and recommendation adopted, 2022 WL 35926 (N.D.N.Y. Jan. 4, 2022); see also Zherka v. Amicone, 634 F.3d 642, 643 (2d Cir. 2011). "Private citizens alleging retaliation for their criticism of public officials are generally required to show that the alleged adverse action taken in retaliation resulted in actual chilling of their exercise of their constitutional right to free speech." Id. (citing, inter alia, Vaher v. Town of Orangetown, 916 F. Supp. 2d 404, 430 (S.D.N.Y. 2013)).  "In other private citizen cases, however, the Second Circuit has dispensed with the 'chilling' requirement, where the retaliation is alleged to have caused an injury separate from any chilling effect." Id. (quoting Morales v. Valley Stream Union Free Sch. Dist. 24, No. 18-CV-3897, 2019 WL 5874136, at *4 (E.D.N.Y. Aug. 14, 2019), report and recommendation adopted, 2019 WL 4253975 (E.D.N.Y. Sept. 9, 2019)).  The Supreme Court has found the following "persuasive": "in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a *separate* concrete harm." TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2210-11 (2021) (citation omitted)

Plaintiff does not allege that he suffered any harm from Officer Springsted's threat except that he was "under the fear and threat of jail."  Compl. at 4-5.  Plaintiff does not allege that the threats "chilled" his speech in any way.  See Gill v. Pidlypchak, 389 F.3d 379, 383 (2d Cir. 2004) (explaining that whether conduct "chilled" a plaintiff's speech "is only a problem where no harm independent of the First Amendment is alleged.  For there, the only injury is the chilling itself.").  Rather, he alleges that he "sent out several correspondences to the Governor Kathy Hochul and the Chief Judge of Green County and also filed a complaint with the Justice Department."  Id. at 5.

Plaintiff's allegation of fear of future arrest, standing alone, is insufficient to state an injury from a First Amendment violation.  As such, it is recommended that any potential claim against Officer Springsted be dismissed.

### C.  Cell Phone Policy

Plaintiff provides a single sentence concerning a cell phone policy.  He states, "[t]he town still has a sign and illegal policy posted on the front door stating no cellphones in a publicly funded building."  Compl. at 5.  Plaintiff provides no other allegations concerning this issue, nor does he state what claim he seeks to bring or the relief he desires.  As such, he has failed to follow Rule 8 of the Federal Rules of Civil Procedure which requires enough information "to give fair notice of the claim being asserted . . . ."  Flores, 189 F.R.D. at 55.  Thus, it is recommended that any potential claim on this issue be dismissed.  See Reeves v. New York, No. 1:21-CV-659 (LEK/DJS), 2021 WL 5095310, at *2 (N.D.N.Y. July 23, 2021) ("From a purely form perspective, the Complaint fails to provide specific facts relevant to the claims or to relate them to federal causes of action.  This alone would be sufficient basis to dismiss the Complaint upon initial review."), report and recommendation adopted as modified, 2021 WL 3928950 (N.D.N.Y. Sept. 2, 2021).

### IV.  Leave to Amend

Generally, "[a] *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir.

19

2014) (citation omitted).  "However, if the problems with a complaint are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to re-plead would be 'futile' and 'should be denied.'"  Edwards v. Penix, 388 F. Supp. 3d 135, 144-45 (N.D.N.Y. 2019) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)).  Insofar as the Town of Coxsackie Court, Town Justice Dorpfeld, Clerk of the Court Polizzi, and Commissioner Schroeder are immune from suit, it is recommended that the claims against them be dismissed with prejudice and without leave to amend. As for the recommendation that claims against the police officers and Commissioner Schroeder in his individual capacity be dismissed because of Younger abstention and failure to state a claim, it is recommended that they be dismissed without prejudice and with leave to amend.


## V.  Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 2) is **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's claims against the Town of Coxsackie Court, Town Justice Dorpfeld, Court Clerk Polizzi, and Commissioner Schroeder in his official capacity (Dkt. No. 1) be **DISMISSED WITH PREJUDICE and WITHOUT LEAVE TO AMEND**; and it is further

**RECOMMENDED**, that plaintiff's claims against Officer Bartolucci, Officer Springsted, and Commissioner Schroeder in his individual capacity be **DISMISSED WITHOUT PREJUDICE and WITH LEAVE TO AMEND**;[4] and it is further

**RECOMMENDED**, that should the District Judge adopt this Report-Recommendation and Order, plaintiff be given thirty (30) days from the date of the Order adopting this Report-Recommendation and Order to file an amended complaint, and if plaintiff does not file an amended complaint, it will be deemed as an abandonment of any claims for which leave to replead has been granted and will result in judgment being entered against plaintiff on these claims without further order by the Court; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).[5]

---

[4] Any amended pleading supersedes and replaces a prior pleading in its entirety.  In the event the District Judge adopts the undersigned's recommendation and plaintiff amends his complaint, plaintiff is advised that any amended pleading cannot incorporate a prior pleading or its exhibits by reference.  An amended pleading must establish this Court's jurisdiction and state a claim for relief against each named defendant for which leave to replead was granted according to Rules 8 and 10 of the Federal Rules of Civil Procedure.

[5] If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections.

Dated:  September 27, 2023
        Albany, New York


Christian F. Hummel
U.S. Magistrate Judge

---

FED R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(c).